UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIUS CHERRY, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>STRATEGIC PROPERTIES OF NORTH AMERICA, LLC, et al.,<br><br>                Defendants. | No.  2:22-cv-00999-DAD-DB<br><br>ORDER GRANTING, IN PART, DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFFS' MOTION TO COMPEL AS HAVING BEEN RENDERED MOOT<br><br>(Doc. Nos. 16, 17, 28) |

This matter is before the court on defendants' motion to dismiss plaintiffs' complaint pursuant to Federal Civil Procedure Rules 12(b)(2), 12(b)(3), and 12(b)(6).  (Doc. No. 16.)[1]  On

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order.  This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion.  While that situation was partially addressed by the U.S. Senate's confirmation of district judges for two of this court's vacancies on December 17, 2021 and June 21, 2022, another vacancy on this court with only six authorized district judge positions was created on April 17, 2022 and still remains unfilled.  It has now been over 37 months since this court had its full complement of authorized district judges.  For over twenty-two of those months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants.  That situation resulted in the court not being able to issue orders in submitted civil matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog.  This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

October 10, 2022, defendants' motion was taken under submission on the papers. (Doc. No. 24.) For the reasons set forth below, the court will grant defendants' motion to dismiss (Doc. No. 16), in part. The court will also deny plaintiffs' pending motion to compel arbitration (Doc. No. 28) as having been rendered moot by this order.

**BACKGROUND**

On April 27, 2022, plaintiffs Julius Cherry and Gerard Glazer (collectively, "plaintiffs") filed this action against defendants Strategic Properties of North America ("SPONA"), Saul Kuperwasser (collectively, "defendants"), and Does 1–20 in the Sacramento County Superior Court. (Doc. No. 1-1 at 1.) On June 8, 2022, defendants removed this action to this federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. (Doc. No. 1 at 2.) In their complaint, plaintiffs allege as follows.

Plaintiffs are owners of two residential units in a condominium building located at 10 E. Ontario Street in Chicago, Illinois (the "subject condominium"). (Doc. No. 1-1 at ¶ 2.) Plaintiffs reside in the Sacramento area and purchased their condominium units as "retirement/investment property." (*Id.* at ¶¶ 2, 8.) Defendant SPONA is a Delaware limited liability company that purchases residential properties and is attempting to purchase the subject condominium. (*Id.* at ¶ 9.) Defendant Kuperwasser is a principal at SPONA. (*Id.* at ¶ 10.)

The subject condominium consists of 467 residential units. (*Id.* at ¶ 16.) All of the units and common elements in the subject condominium are owned by the unit owners, who constitute the members of the subject condominium's residential dwelling community, the Private Residences at Ontario Place Condominium Association (the "Condominium Association"). (*Id.* at ¶¶ 18, 20.)

On February 26, 2020, SPONA sent the subject condominium's Board of Managers ("BOM") a letter of intent to purchase all 467 units and common spaces of the subject condominium. (*Id.* at ¶ 25.) In August 2020, the proposed sale failed to pass a vote by the unit owners of the subject condominium. (*Id.* at ¶ 29.) Subsequently, SPONA sent the BOM a second letter of intent to purchase the subject condominium, which was put to another vote before the subject condominium's unit owners—and again failed to pass—on August 26, 2021. (*Id.* at

¶¶ 30–31.) Despite the two failed attempts to pass the proposed sale of the subject condominium, SPONA "engaged in secret discussions" with members of the BOM, who "met privately to strategize about anyway [sic] to change the vote." (*Id.* at ¶¶ 28, 31.) The members of the BOM then, "[w]ith the aid and assistance of SPONA," extended the vote on the proposed sale through September 10, 2021. (*Id.* at ¶¶ 31–32.) The BOM and SPONA "railroaded this [extended] vote" and thus were able to "intentionally push through the sale." (*Id.* at ¶ 32.)

On November 7, 2021, SPONA and the BOM entered into an Agreement of Purchase and Sale ("APS") for the bulk sale of all units in the subject condominium, culminating in a "Fourth Amendment to Agreement of Purchase and Sale" entered into on March 18, 2022 ("amended APS"). (*Id.* at ¶¶ 39, 42.) Plaintiffs allege that the amended APS has extended the closing date on the proposed sale without plaintiffs' consent; plaintiffs do not wish to sell their units; and plaintiffs wish to use their own title company in connection with the sale, rather than use SPONA's choice of title company as set forth in the APS. (*Id.* at ¶¶ 43, 45.)

Based on the foregoing allegations, plaintiffs assert the following claims: (1) intentional infliction of emotional distress; (2) fraud and deceit; (3) conversion; and (4) elder abuse. (*Id.* at ¶¶ 62–91.) Plaintiffs seek damages and a judicial declaration that, *inter alia*, the APS is null and void and the proposed sale is canceled. (*Id.* at ¶¶ 49–61, 91.)

On April 27, 2022, plaintiffs initiated this action in the Sacramento County Superior Court. (Doc. No. 1-1 at 1.) Defendants removed this action to this court on June 8, 2022. (Doc. No. 1.) On August 31, defendants filed the pending motion to dismiss plaintiffs' complaint. (Doc. No. 16). On October 14, 2022, plaintiffs filed their opposition to the pending motion. (Doc. No. 25.) Defendants filed their reply thereto on November 4, 2022. (Doc. No. 26.)

**LEGAL STANDARD**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of personal jurisdiction. In opposing such a motion, the plaintiff bears the burden of proof to show that jurisdiction is appropriate. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). When a defendant's motion to dismiss is based on written materials rather than an evidentiary hearing and

1  is to be decided on the pleadings, affidavits, and discovery materials, the plaintiff need only make
2  a *prima facie* showing that personal jurisdiction exists in order for the action to proceed. *See*
3  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Picot*, 870 F.3d at 1211.

       In determining whether a plaintiff has established personal jurisdiction, the court accepts the plaintiff's allegations as true and resolves any conflicts between the parties over statements contained in affidavits in the plaintiff's favor. *Love*, 611 F.3d at 608; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, where allegations are controverted by a defendant, the plaintiff cannot "simply rest on the bare allegations of [the] complaint, but rather [is] obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Philips v. Pitt Cnty. Mem'l Hosp., Inc.*, 855 F. App'x 324 (9th Cir. 2021)[2] (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)).

       "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). "California's long-arm statute allows courts to exercise personal jurisdiction over defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Core-Vent Corp.*, 11 F.3d at 1484; *see also* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."). Thus, only constitutional principles constrain the jurisdiction of a federal court in California. *Love*, 611 F.3d at 608–09.

       Under the Fourteenth Amendment's due process clause, courts may exercise personal jurisdiction over non-resident defendants only so long as there are sufficient "minimum contacts" between the defendant and the forum state "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Each defendant's contacts with the forum State must be assessed individually." *Calder*

/////

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

*v. Jones*, 465 U.S. 783, 790 (1984).[3]  "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes:  specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068.

## ANALYSIS

In the pending motion to dismiss, defendants contend that:  (1) this court lacks personal jurisdiction over them; (2) the Eastern District of California is an improper venue; and (3) plaintiffs fail to state any cognizable claims upon which relief can be granted.[4]  (Doc. No. 16 at 9, 15.)

**A.    Personal Jurisdiction Pursuant to Rule 12(b)(2)**

Defendants contend that plaintiffs' complaint must be dismissed because this court lacks both general and specific personal jurisdiction over them.  (Doc. No. 16 at 10.)  In opposition, plaintiffs argue that this court may exercise personal jurisdiction over defendants.  (Doc. No. 25 at 9.)

As an initial matter, the court rejects plaintiffs' argument that defendants have waived any objection to personal jurisdiction by their participation in this action up until this point.  Plaintiffs first contend that by removing this action from state to federal court, defendants waived any objection to this court's exercise of personal jurisdiction over them.  (*See id.*)  While it is true that a defendant can waive an objection to personal jurisdiction by failing to raise it in a timely manner, *see* Federal Rule of Civil Procedure 12(h), the "standard rule" is that "a defendant does not waive jurisdictional challenges by removing a case to federal court." *Munjy v. Destination XL Grp., Inc.*, No. 1:14-cv-01557-TLN-SKO, 2015 WL 1021129, at *3 (E.D. Cal. Mar. 9, 2015)

---

[3]  A plaintiff must also establish personal jurisdiction for "each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.*

[4]  Defendants have also filed a request for judicial notice of several exhibits, which include various filings from other litigation in which plaintiffs are or were involved. (Doc. No. 17.)  Because the court is able to resolve the pending motion without reference to these exhibits and ultimately grants defendants' motion to dismiss without leave to amend, the court will deny defendants' request for judicial notice.

5

(quoting *Naxos Resources (U.S.A.) Ltd. v. Southam Inc.*, No. 2:96-cv-02314-WJR-MC, 1996 WL 662451, at *8 (C.D. Cal. Aug. 16, 1996)); *see also Rivera v. Bally's Park Place, Inc.*, 798 F. Supp. 2d 611, 615 (E.D. Pa. 2011) (noting that "removal to federal court does not constitute . . . a waiver" to a defendant's objection to personal jurisdiction); *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) ("[I]f the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal . . . ."). Plaintiffs next advance the unpersuasive argument that "defendants have engaged in 63 days of settlement discussions, and discussions regarding stipulating to consolidate this case [with a related case], which . . . constitutes an appearance waiving any objection to personal jurisdiction." (Doc. No. 25 at 9.) The sole case plaintiffs cite, ostensibly in support of this contention, pertains to what constitutes a party's appearance in an action for purposes of default judgment pursuant to Rule 55 and nowhere mentions personal jurisdiction. (*See id.*) (citing *H.F. Livermore Corp. v. Aktiengesellschaf Gebruder Loepfe*, 432 F.2d 689, 691 (D.D.C. 1970)). "As a general rule, if a party files a *responsive pleading* or makes a Rule 12 motion but does not raise personal jurisdiction as a defense, the party waives the right to raise personal jurisdiction." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 2d 1002, 1008 (N.D. Cal. 2014) (emphasis added). Participation in settlement and stipulation discussions are a far cry from filing a responsive pleading or a Rule 12 motion, and defendants have not waived their objections to personal jurisdiction through any such discussions. *See* Fed. R. Civ. P. 12(h)(1); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 2d at 1009 (rejecting the argument that simply by being a part of litigation for over five years, defendant had waived its personal jurisdiction defense by implication). Therefore, the court finds that defendants have not waived their personal jurisdiction objections and timely raised them in their pending motion to dismiss.

The court next considers whether this court has personal jurisdiction over defendants. In their complaint, plaintiffs do not proffer any basis—either general or specific—on which this court may exercise personal jurisdiction over the named defendants in this action. Nonetheless, in their opposition to the pending motion, plaintiffs advance arguments only with respect to specific personal jurisdiction, apparently conceding that this court lacks general personal

jurisdiction over defendants. (*See* Doc. No. 25 at 9–15; *see also* Doc. No. 16 at 10); *Lopez v. County of Los Angeles*, No. 3:15-cv-03804-TEH, 2016 WL 54123, at *2 (N.D. Cal. 2016) ("[B]ecause Plaintiff failed to oppose many arguments in the instant motion to dismiss, the Court may treat such non-opposition as implicit consent to the merits of the arguments asserted, and consequently as consent to dismissal of the Complaint."). Accordingly, the court will consider only whether specific jurisdiction over defendants exists in California.

The parties do not dispute that defendants are not residents of California. (*See* Doc. Nos. 16 at 10; 25 at 10.) In determining whether a court has specific jurisdiction over a non-resident defendant, the following three-prong test is to be employed:

> (1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which *arises out of* or *relates to* the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be *reasonable*.

*Picot*, 780 F.3d at 1211 (citing *Fred Martin Motor Co.*, 374 F.3d at 802) (emphasis added). Plaintiff has the burden of establishing the first two of these prongs, and a "strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc). If plaintiff meets this burden, the burden then shifts to defendant on the third prong to show that the exercise of jurisdiction would not be reasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

1. Purposeful Direction of Activities

The analysis under this first prong of the three-step inquiry differs depending on whether the action involves allegations of tortious conduct or contractual obligations. *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995); *Sinatra v, National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir. 1988). A "purposeful availment" analysis is typically applied in suits sounding in contract, and a "purposeful direction" analysis is typically applied in suits sounding

1    in tort. *See Fred Martin Motor Co.*, 374 F.3d at 802.  Because plaintiffs' claims asserted in this
2    action sound in tort, the court will apply the purposeful direction analysis.  *See Bunting v. Carter-*
3    *Bunting*, No. 3:11-cv-00414-L-WMC, 2012 WL 460458, at *3 (S.D. Cal. Feb. 13, 2012)
4    (applying purposeful direction analysis where plaintiff's claims included fraud and elder abuse);
5    *Mitilier v. Kaminsky*, No. 3:09-cv-01720-JAH-AJB, 2010 WL 11508244, at *4 (S.D. Cal. Feb.
6    16, 2010) (applying purposeful direction analysis where plaintiff's claims included intentional
7    infliction of emotional distress); *Hall v. Nelson Aircraft Sales, Inc.*, No. 1:05-cv-01529-REC-
8    LJO, 2006 WL 902449, at *3, 6 (E.D. Cal. Apr. 5, 2006) (describing plaintiff's claims for fraud
9    and deceit as giving rise to a tort action); *Mee Indus., Inc. v. Adamson*, No. 2:18-cv-003314-CAS-
10   JC, 2018 WL 6136813, at *4 (C.D. Cal. Feb. 5, 2019) ("[B]ecause plaintiff's claim[] for . . .
11   conversion . . . sound[s] in tort, purposeful direction is the proper analytical framework.").

12   "Where allegedly tortious conduct takes place outside the forum and has effects inside the
13   forum," courts in the Ninth Circuit examine purposeful direction by using the three-part "effects"
14   test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).  *AMA Multimedia,*
15   *LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020), *cert. denied*, No. 20-1430, ⸺ U.S. ⸺,
16   142 S. Ct. 76 (2021).  This "*Calder* effects test" asks whether the defendant is alleged to have (1)
17   committed an intentional act (2) that was expressly aimed at the forum state and (3) that caused
18   harm the defendant knew was likely to be suffered in the forum state.  *Fred Martin Motor Co.*,
19   374 F.3d at 803.

20   Under the first element, "[t]he meaning of the term 'intentional act' . . . is essentially the
21   same as in the context of intentional torts; namely, the defendant must act with the 'intent to
22   perform an actual, physical act in the real world.'"  *Picot*, 780 F.3d at 1214 (quoting *Fred Martin*
23   *Motor Co.*, 374 F.3d at 806).  Here, taking the facts alleged in the complaint in the light most
24   favorable to plaintiffs, the court concludes that plaintiffs have sufficiently alleged that defendants
25   committed an intentional act by entering into the APS, amended APS, and pursuing the purchase
26   of the subject condominium.  *See, e.g.*, *Thomas v. Thomas*, No. 8:14-cv-01096-JLS-RNB, 2015
27   WL 12681311, at *2, 4 (C.D. Cal. May 8, 2015) (trustee's alleged transfer of trust assets
28   constitutes an intentional act); *Eighteen Seventy L.P. v. Jayson*, 532 F. Supp. 3d 1125, 1138 (D.

8

Wyo. 2020) (defendant's alleged misrepresentations to investors made in order to induce investment in a company constitute intentional acts); *Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1068 (S.D. Cal. 2019) (development, advertising, and sale of a product constitutes an intentional act).

Under the second element of the *Calder* effects test, express aiming at the forum state, the focus of the court's analysis is on the "defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In this case, the court concludes that plaintiffs have not carried their burden of sufficiently alleging that the named defendants expressly aimed their intentional conduct at California. *See Picot*, 780 F.3d at 1211. In their opposition to the pending motion, plaintiffs assert that the following allegations constitute sufficient contacts between defendants and California for personal jurisdiction over them to exist here:

1. A number of unit owners reside in California.
2. Any lease agreement is required to be approved by SPONA.
3. Extensive answers to questions were provided by SPONA to the [BOM] and sent to the [unit] owners all over the world.
4. SPONA is required by law to use plaintiffs' title company and title officer and work with them.
5. Only plaintiffs and SPONA can engage in arbitration of the value of plaintiffs' units. . . .
6. Plaintiffs voted on the APS in California. Materials and voting packages were sent to plaintiffs in California.
7. All board meetings regarding the sale were held in California via Zoom.

(Doc. No. 25 at 12.) Contrary to plaintiffs' unsupported assertions, the fact that an unspecified number of unit owners reside in California does not "on its face" confer jurisdiction. (*See id.*); *see also Walden*, 571 U.S. at 285. Similarly, SPONA's potential legal obligations with respect to the proposed bulk purchase of the subject condominium in Illinois—such as SPONA being "required" to approve unspecified lease agreements, using certain title company selection procedures pursuant to Illinois law, and being subject to an arbitration agreement—do not,

9

without more, demonstrate that defendants have expressly aimed any contact whatsoever at California. In addition, and notably, none of these seven alleged contacts actually describe activities alleged to have been taken by *defendants* and aimed at California (or even at plaintiffs). As alleged, defendant SPONA provided information about the proposed purchase to the BOM, and the BOM then sent that information to unit owners, including plaintiffs. (*See id.* at 12.) A prospective buyer providing information to a seller relating to the purchase of real property in Illinois can hardly be deemed to be an activity expressly aimed at the state of California. Similarly, *plaintiffs*, not defendants, voted on the APS in California, and plaintiffs conveniently decline to state whether defendants were the ones to mail the materials and voting packages to California, instead omitting that information. (*See id.*; *but see* Doc. No. 1-1 at ¶¶ 29–37) (describing the *BOM*'s actions with respect to disseminating information about the prospective sale of the subject condominium to unit owners and collecting votes). Finally, plaintiffs appear to contend that simply because *plaintiffs* joined the *BOM*'s Zoom meetings pertaining to the proposed sale while in California, defendants—who plaintiffs do not even allege attended these virtual meetings, or even if they did attend, had any knowledge that plaintiffs were joining the meetings from California—expressly aimed their conduct toward California.

In short, the court agrees with defendants that "[a]n Illinois homeowners' association who sends an email to someone with multiple homes in multiple states to participate in an online Zoom meeting with hundreds of other individuals regarding the possible sale of Illinois real property is hardly engaging in conduct such that the [prospective buyers] should reasonably anticipate being haled into a California court." (Doc. No. 26 at 5.) Thus, even taking the facts alleged in their complaint in the light most favorable to plaintiffs, the court finds that defendants' alleged activities in connection with this action are at most, "'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 462 U.S. 770, 774 (1984) and *World-Wide Volkswagen Corp.*, 444 U.S. at 299).

Plaintiffs also advance the unpersuasive argument that defendants "clearly attempt[ed] to promote or transact business in California" because they "actively, continuously and aggressively

attempted and continue to attempt to force plaintiffs . . . to sell their property." (Doc. No. 25 at 12.) Although plaintiffs refer to themselves as "known California residents and citizens" (*id.*), they do not specifically allege that *defendants* knew that plaintiffs—two owners of condominium units in a 467-unit condominium property located in Illinois—also maintained residences in California. In any event, the express aiming requirement is clearly not satisfied merely "by a defendant's knowledge that harm may be inflicted on a plaintiff in a particular forum." *AMA Multimedia, LLC*, 970 F.3d at 1209, n.5 (citing *Axiom*, 874 F.3d at 1068–70; *Walden*, 571 U.S. at 286); *see also Fred Martin Motor Co.*, 374 F.3d at 807 (finding that while "[i]t may be true that [defendant's] intentional act eventually caused harm to [plaintiff] in California . . . . this does not confer jurisdiction"). Accordingly, plaintiffs have not established the express aiming prong of the *Calder* effects test.

As for the third and final element of the *Calder* effects test, which concerns the sufficiency of allegations of harm, "'something more' than mere foreseeability" is required. *Fred Martin Motor Co.*, 374 F.3d at 804–05 (quoting *Bancroft & Masters*, 223 F.3d 1082, 1087 (9th Cir. 2000)). An action taken outside the forum state with foreseeable effects within the forum state does not *per se* give rise to specific personal jurisdiction. *Id.* As the Supreme Court has made clear, "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290. Accordingly, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

Because plaintiffs have not alleged facts establishing that defendants expressly aimed their conduct at California, the court has no basis upon which to find that it would have been foreseeable that defendants' actions in Illinois regarding the purchase of property in Illinois would cause harm to plaintiffs in California. *See Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231, 1246 (D. Haw. 2019) (finding that it was foreseeable that a Hawaii plaintiff would suffer harm in Hawaii, where the defendant expressly aimed its conduct, but it was not foreseeable that a California plaintiff would suffer harm in California, where the defendant did not expressly aim

11

its conduct); *cf. Loomis*, 420 F. Supp. 3d at 1070 (finding that it was foreseeable that defendant's conduct targeted at California would cause harm in that state). The third element of the *Calder* effects test is not met where, as here, the only connection between defendants' conduct and the forum state is an injury to plaintiffs who happen to reside in the forum state. *See Walden*, 571 U.S. at 290. Moreover, in their opposition to the pending motion plaintiffs do not provide any arguments or authority relating to this third element of the *Calder* test.[5] Accordingly, the court finds that plaintiff have not met their burden of demonstrating the elements of the *Calder* effects test,[6] and as a result, have failed to allege facts establishing that defendants purposefully directed their activities toward California.

2.  Claim Arises Out of or Relates to Forum-Related Activities

To satisfy the second prong of the specific jurisdiction analysis, plaintiffs must show that their claims arise out of or relate to the non-resident defendant's forum-related activities. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, ⸺ U.S. ⸺, 137 S. Ct. 1773, 1780 (2017); *Picot*, 780 F.3d at 1211. The Supreme Court has provided the following guidance with regard to this prong:

> The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation— i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct.

*Ford Motor Co. v. Montana Eighth Judicial District Court*, ⸺ U.S. ⸺, 141 S. Ct. 1017, 1026

---

[5] Rather, plaintiffs simply contend that "defendants were fully aware that they could be 'haled into Court' in the forum state, California, if their activities to known residents there were fraudulent or otherwise tortious." (*See* Doc. No. 25 at 12.) This conclusory statement falls well short of demonstrating that defendants caused harm that they knew was likely to be suffered in the forum state or that defendants' conduct connects them to California in a meaningful way, as is required by the third element of the *Calder* effects test. *See Fred Martin Motor Co.*, 374 F.3d at 805; *Walden*, 571 U.S. at 290.

[6] Indeed, plaintiffs do not address the "*Calder* effects test" in their briefing on the pending motion at all, further supporting the court's conclusion that plaintiffs have not met their burden in establishing purposeful direction, the first prong of the specific jurisdiction analysis.

(2021) ("*Ford Motor*"). In other words, "although the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum, a strict causal relationship between the defendant's activities in the forum and the harm is not required." *Wesch v. Yodlee, Inc.*, No. 3:20-cv-05991-SK, 2021 WL 3486128, at *5 (N.D. Cal. Aug. 5, 2021) (citing *Ford Motor*, 141 S. Ct. at 1025-26). Rather, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[7] *Ford Motor*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1780).

Because plaintiffs fail to allege any contacts by defendants with California, they likewise fail to allege that their claims arise out of defendants' California-related activities. *See Picot*, 780 F.3d at 1215 (finding that "none of [defendant's] challenged conduct had anything to do with [California] itself" where the defendant's suit-related conduct was all conducted "from his residence in Michigan, without entering California, contacting any person in California, or otherwise reaching out to California"); *LNS Enterprises LLC v. Continental Motors, Inc.*, 22 F. 4th 852, 863–64 (9th Cir. 2022) ("Given that there are no material contacts that Plaintiffs have put into the record, [defendant's] alleged contacts with Arizona are inadequate to render [defendant] subject to jurisdiction in Arizona."). Accordingly, the court finds that, as alleged, defendants' actions in this case do not connect them with California in a way sufficient to support the assertion of personal jurisdiction over them here. *See Picot*, 780 F.3d at 1215.

/////

/////

---

[7] Before the Supreme Court's decision *Ford Motor*, courts in the Ninth Circuit required a showing of but-for causation, i.e., but for defendant's alleged contacts with and activities within the forum state, plaintiff's cause of action would not have arisen. *Talavera Hair Prods., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 3:18-cv-823-JLS-JLB, 2021 WL 3493094, at *10 (S.D. Cal. Aug. 6, 2021) ("[C]ourts within the Ninth Circuit have traditionally applied a 'but for' test to determine whether a claim 'arises out of or relates to' a defendant's contacts with a forum."); *Clarke v. Dutton Harris & Co., PLLC*, No. 2:20-cv-00160-JAD-BNW, 2021 WL 1225881, at *4 (D. Nev. Mar. 31, 2021) ("Historically, courts in the Ninth Circuit exclusively relied on a 'but for' test to determine whether a particular claim arises out of forum-related activities. But the Supreme Court appears to have recently done away with that approach in [*Ford Motor*].").

13

       3.     <u>Reasonableness</u>

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Having failed to satisfy the first two prongs of the specific jurisdiction analysis, plaintiffs have failed to establish that defendants are subject to personal jurisdiction in California with respect to the claims asserted in their complaint. Accordingly, the court need not address reasonableness, the third element of the specific jurisdiction analysis.

**B.**     **Jurisdictional Discovery**

In their opposition to defendants' motion, plaintiffs request that if the court grants defendants' motion to dismiss for lack of personal jurisdiction, that plaintiffs be granted leave to conduct "limited discovery regarding the personal jurisdiction issue." (Doc. No. 25 at 23.)

Discovery should ordinarily be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498, United Foods & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir.1986) (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (alteration in original) (quoting *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988); *see also Boschetto*, 539 F.3d at 1020 (affirming the denial of a request for jurisdictional discovery "based on little more than a hunch that [discovery] might yield jurisdictionally relevant facts"). Thus, limited discovery should not be permitted to conduct a "fishing expedition." *Mackovich v. United States*, No. 1:06-cv-00422-SMS (PC), 2008 WL 2053978, at *1 (E.D. Cal. May 13, 2008) (denying discovery where plaintiff made "no showing that if further discovery were allowed, the outcome of the resolution of Defendant's motion to dismiss would be affected") (citing *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)).

/////

Here, plaintiffs have not met their burden of establishing the existence of personal jurisdiction over defendants. Moreover, plaintiffs have not explained how limited discovery would likely reveal contacts that would give rise to general or specific personal jurisdiction over defendants. Indeed, plaintiffs do not provide any argument or explanation whatsoever for their request to conduct jurisdictional discovery. Plaintiffs have therefore not established that authorizing jurisdictional discovery is justified in this case, and the court will not permit the entirely speculative discovery plaintiffs seek. *See Scanlon v. Curtis Int'l*, 465 F. Supp. 3d 1054, 1067–68 (E.D. Cal. 2020) (denying a request for jurisdictional discovery based on the mere speculation that discovery might reveal facts that support personal jurisdiction).

**C.     Leave to Amend**

"Courts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (quoting Fed. R. Civ. P 15(a)(2) and *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). There are several factors a district court considers in determining whether to grant leave to amend, including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Of the factors from *Foman*, the court should particularly consider prejudice to the opposing party. *Id.*; *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

In plaintiffs' opposition to the pending motion to dismiss, they argue that if the court were to find that certain of their allegations—specifically, their allegations with respect to the fraud claim or with respect to defendant Kuperwasser's alleged collusion with defendant SPONA and the BOM—are deficient, that such defects could be "remedied by amendment." (Doc. No. 25 at 15, 22.) Notably, plaintiffs advance no such argument with respect to the court's ability—or lack thereof—to exercise personal jurisdiction over defendants based on their alleged contacts with California. Indeed, apart from the narrow issues of fraud and defendant Kuperwasser's involvement in proposed purchase, plaintiffs do not otherwise request leave to amend. The court

15

finds this silence telling.  Given that plaintiffs have not pled facts supporting the assertion of personal jurisdiction in this action, do not suggest that they could cure the defects with respect to personal jurisdiction by amending their complaint, and do not even request leave to amend their complaint in this regard, the court finds that the granting of leave to amend here would be futile.  Therefore, defendants' motion to dismiss for lack of personal jurisdiction will be granted without leave to amend.

**D.     Improper Venue Pursuant to Rule 12(b)(3) and Failure to State a Claim Pursuant to Rule 12(b)(6)**

Having concluded that the court lacks personal jurisdiction over defendants, the court will not address defendants' arguments advanced in support of their motion brought pursuant to Rules 12(b)(3) and 12(b)(6).  Accordingly, defendants' pending motion to dismiss will be denied to the extent it rests on the remaining bases for dismissal argued therein as having been rendered moot by this order.

**E.     Plaintiffs' Motion to Compel**

On January 5, 2023, plaintiffs filed a motion to compel arbitration and stay this action pending conclusion of such arbitration.  (Doc. No. 28.)  Because the court grants defendants' motion to dismiss for lack of personal jurisdiction without leave to amend, the court will deny plaintiffs' pending motion to compel arbitration (Doc. No. 28) as having been rendered moot by this order.

**CONCLUSION**

For the reasons stated above:

1. Defendants' motion to dismiss for lack of personal jurisdiction (Doc. No. 16) is granted without leave to amend;

2. The remainder of defendants' motion to dismiss (Doc. No. 15) is denied as having been rendered moot by this order;

3. Defendants' request for judicial notice (Doc. No. 17) is denied as unnecessary;

/////

/////

4. Plaintiffs' motion to compel (Doc. No. 28) is denied as having been rendered moot by this order; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **February 13, 2023**

/s/ Dale A. Drozd
UNITED STATES DISTRICT JUDGE